UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SUMMER INFANT (USA), INC.,      :
      Plaintiff/Counter Defendant,   :
                                    :
             v.                 :     C.A. No. 17-549MSM
                                    :
TOMY INTERNATIONAL, INC.,      :
      Defendant/Counter Claimant.   :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Defendant TOMY International, Inc., ("TOMY") is the owner of U.S. Patent No.

6,578,209 ("'209 Patent"), titled "Tubs for Bathing Infants and Toddlers."  ECF No. 1 ¶¶ 14-16;

Ex. A.  TOMY sells an infant/toddler bathing tub, the "Sure Comfort Deluxe Newborn to

Toddler Tub" ("TOMY Tub," Exemplar Ex. C), that it contends is a commercial embodiment of

at least one claim in the '209 Patent.  Beginning in 2017, Plaintiff Summer Infant (USA), Inc.,

("Summer") began selling an infant/toddler bathing tub ("Accused Tub," Exemplar Ex. A) in

competition with the TOMY Tub.  On November 14, 2017, TOMY sent Summer a cease-and-

desist letter, asserting that the Accused Tub infringes the '209 Patent.  Summer responded by

initiating this action seeking a declaration that the Accused Tub does not infringe the '209

Patent.  TOMY counterclaimed for infringement, alleging that the Accused Tub meets every

limitation of at least three independent claims (Claims 1, 23 and 30) of the '209 Patent, either

literally or under the doctrine of equivalents.  Summer answered the counterclaim by claiming

that the '209 Patent is invalid.  Summer also made a design change affecting the stacking height

of the Accused Tub, resulting in an infant/toddler bathing tub that TOMY concedes is non-infringing ("Redesigned Tub," Exemplar Ex. B).[1]  ECF No. 98-2 at 2.

Now pending before the Court and referred to me are an array of motions.  First, referred for report and recommendation are the parties' cross motions for partial summary judgment; TOMY's motion seeks judgment in its favor on invalidity, infringement and willfulness (ECF No. 87), while Summer's motion seeks judgment of non-infringement (ECF No. 99).[2]  Referred for determination[3] are the parties' cross motions pursuant to Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) ("Daubert"), each seeking to exclude the infringement opinions of the other's technical expert (ECF Nos. 84, 94).  Also referred for determination but focused on TOMY's evidentiary support for damages are Summer's Daubert motions to exclude TOMY's damages expert (ECF No. 95), as well as the damages opinions of TOMY's technical expert (ECF No. 94).  Finally, referred for determination is Summer's combined motion to strike an email that it contends contains inadmissible hearsay and motion to preclude TOMY from arguing that the infringement was willful because Summer failed to adhere to its own legal clearance process of obtaining advice of counsel (ECF No. 107).  Because the issues presented by the motions are legally and factually intertwined, a pre-hearing conference and hearings on all of them collectively were conducted on three separate days.  The Court has carefully reviewed and considered the extensive evidentiary record (comprising the three exemplar tubs – Exemplar Exs.

---

[1] In connection with these motions, the parties submitted exemplars of each of the three tubs, which the Court received as full Exemplar Exhibits A, B and C.

[2] In compliance with Local Rule Cv 56(a), the parties have filed Statements of Undisputed and Disputed Facts, which are referenced in this report and recommendation.  Summer's Statements are cited as "SSUF" (ECF No. 100) and "SSDF" (ECF No. 108), while TOMY's are cited as "TSUF" (ECF No. 89) and "TSDF" (ECF No. 104).

[3] The referred motions are intertwined – both legally and factually – and are therefore analyzed together in this report and recommendation.  Those that were referred for determination have been ruled upon separately by text order issued contemporaneously with this report and recommendation for the reasons explained in the text.  Because this is a report and recommendation, I have presented my analysis of each of the referred motions.

A-C – and over 1200 pages of facts, declarations, expert reports, deposition excerpts and documents) presented by the parties.  The Court did not hear testimony regarding the <u>Daubert</u> motions based on the parties' agreement at the pre-hearing conference that it was not necessary.  <u>See</u> <u>Williams v. Kawasaki Motors Corp., U.S.A.</u>, 30 F.4th 66, 70 (1st Cir. 2022).  The motions are all now ripe for recommendation and determination.

A critical predicate to the issues addressed in this report and recommendation and cited extensively is the Court's claim construction ruling.  <u>Summer Infant (USA), Inc. v. TOMY Int'l, Inc.</u>, C.A. No. 17-549JJM, 2019 WL 4596780, at *8 (D.R.I. Sept. 23, 2019), <u>adopted</u>, 2020 WL 1531403 (D.R.I. Mar. 31, 2020).  Also pertinent is the decision denying TOMY's motion to exclude interrogatory answers.  <u>Summer Infant (USA), Inc. v. TOMY Int'l, Inc.</u>, No. 17-cv-549-MSM-PAS, 2019 WL 5448680 (D.R.I. Oct. 24, 2019).

# I.    INVALIDITY OF '209 PATENT

TOMY's motion for partial summary judgment (ECF No. 87) persuasively argues that the shifting sands of Summer's contentions in support of its invalidity counterclaim may be blown away leaving unsupported its contention that the '209 Patent is invalid and compelling judgment of no invalidity as a matter of law in favor of TOMY.

## A.    <u>Invalidity – Procedural and Factual Background</u>

Summer did not raise its challenge to the validity of the '209 Patent until its answer to TOMY's infringement counterclaim.  TSUF ¶¶ 9-10; <u>see</u> <u>Summer</u>, 2019 WL 5448680, at *1-2 (describing travel of Summer's invalidity defense in connection with TOMY's motion to exclude for violating pretrial order).  During discovery, Summer initially appeared to have abandoned this argument; its first answer to TOMY's contention interrogatory supplied nothing, stating:

> Summer Infant answers that Summer Infant's Complaint does not allege invalidity of the '209 Patent.  To the extent Summer Infant amends its Complaint

to allege invalidity of the '209 Patent, Summer Infant will supplement or amend this Answer in accordance with the Federal Rules of Civil Procedure.

ECF 90-11 at 3; TSUF ¶ 11; <u>Summer</u>, 2019 WL 5448680, at *2.  Consistently, Summer's Rule 30(b)(6) deposition witness denied any knowledge of the factual basis for the claim of invalidity. ECF No. 90-5 at 3; <u>Summer</u>, 2019 WL 5448680, at *2.

As discovery neared its close, Summer changed course.  It supplemented its interrogatory response with a revised answer containing vague factual averments, unadorned by any explanation or rational underpinning, that: (1) the '209 Patent is invalid in view of eight listed references; (2) each of the Claims of the '209 Patent is invalid because the specification is insufficient and fails to inform those with skills in the art about the scope of the invention; and (3) the claim language related to nesting and stacking is ambiguous, indeterminate and precludes any reasoned conclusion as to the scope of the invention.  ECF No. 90-12 at 3; <u>see</u> TSUF ¶ 13. Tacitly conceding its insufficiency, Summer averred that this skimpy answer would soon be supported by expert testimony.  ECF No. 90-12 at 3-4.  Following an extension of fact discovery to allow Summer to add to this answer what it alleged (but TOMY hotly disputed) was a previously undisclosed reference, Summer supplemented the answer again with an attachment designated as "Exhibit A" (ECF No. 90-13 at 5-20), which adds two new references (the one Summer had relied on to extend discovery and the one that TOMY had raised as the reason why it was not new in its opposition to the motion to extend).  <u>Summer</u>, 2019 WL 5448680, at *3-4; <u>see</u> TSUF ¶ 14.  Otherwise, the answer is much longer (sixteen pages) than the prior version because it is more granulated; in substance, however, it is substantially the same vague and conclusory statement of allegations with no explanation or rationale.  <u>Summer</u>, 2019 WL 5448680, at *3-4.  The first sentence of Summer's answer is typical: "Claim 1 of U.S. Patent No. 6,578,209 is invalid under 35 U.S.C. § 102 as anticipated in view of USD299741."  ECF No. 90-

13 at 5.  In similar vague and conclusory language, Summer's interrogatory answer inches

through every limitation and claim of the '209 Patent, alleging that each is invalid due to a

combination of anticipation and/or obviousness based on unspecified aspects of the ten listed

references,[4] as well as based on non-enablement, lack of written description and/or

indefiniteness.  Summer provided nothing regarding how a skilled artisan might address these

issues; its entire presentation is the supplemental interrogatory answer that utterly fails to

articulate the reasoning that underpins its theories of invalidity.

Over TOMY's vigorous objection, in 2019, the Court declined to sanction Summer by

excluding the invalidity defense because it had served the supplemental interrogatory answer so

late in the fact phase of discovery.  Summer, 2019 WL 5448680, at *7.  Importantly, this ruling

was made in reliance on Summer's representation that it "principally plans to use expert

testimony to support its invalidity defense" and the expert discovery phase had not closed.  Id. at

*6 (finding no prejudice caused by Summer's discovery tactics "as long [as] the theory of

invalidity is clarified at the expert phase," in light of the "reality that Summer bears the burden of

proof (clear and convincing evidence) on this affirmative defense").  However, when the fact

discovery phase closed, no expert report had been provided.  TSUF ¶ 15.

### B.    Invalidity – Standard of Review

In the crucible of summary judgment, the Court must assay the parties' evidence "to

ascertain whether a need for trial exists."  Theriault v. Genesis HealthCare LLC, 890 F.3d 342,

348 (1st Cir. 2018).  A trial may be averted if a movant shows "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Garcia-Garcia v.

---

[4] Despite acquiescing to the proposition that it carries the burden to present evidence that a fact finder would accept as clearly and convincingly supporting invalidity, Summer did not place in the summary judgment record any of the cited references on which it purports to rely.

Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017) (internal quotation marks omitted);
see Fed. R. Civ. P. 56.  A fact is "[m]aterial" if it "might affect the outcome of the suit under the
governing law." Audette v. Town of Plymouth, 858 F.3d 13, 19-20 (1st Cir. 2017) (internal
quotation marks omitted).  A dispute is "genuine" if "there is evidence that would allow a
reasonable jury to find for the non-moving party." Id. at 20.  The movant's burden may be
discharged by showing that there is an absence of evidence to support the nonmoving party's
claim or defense. Lecat's Ventriloscope v. MT Tool & Mfg., 351 F. Supp. 3d 1100, 1107 (N.D.
Ill. 2018).  A nonmovant withstands the scrutiny of summary judgment by producing "definite,
competent evidence" of a genuinely disputed material fact of such probative force that, "if it is
credited, a factfinder could resolve the case in favor of the nonmovant." Murray v. Kindred
Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015) (internal quotation marks omitted).  A
nonmovant cannot rely on bald assertions, improbable inferences, or unsupported speculation to
preserve its claims for trial. Alifax Holding Spa v. Alcor Scientific, Inc., C.A. No. 14-440 WES,
2019 WL 13091790, at *3 (D.R.I. Mar. 26, 2019), appeal docketed, No. 22-1641 (Fed. Cir. Apr.
14, 2022).

### C.      Invalidity – Applicable Law

An issued patent is presumed valid.  35 U.S.C. § 282.  To show invalidity at trial, the
accused infringer has "the ultimate burden of persuasion to prove invalidity by clear and
convincing evidence, as well as the initial burden of going forward with evidence to support its
invalidity allegation." BlephEx, LLC v. Myco Indus., Inc., 24 F.4th 1391, 1399 (Fed. Cir. 2022)
(internal quotation marks omitted); see e-Numerate Sols., Inc. v. United States, 149 Fed. Cl. 563,
573 (2020) ("When challenging the validity of an issued patent, the alleged infringer must
overcome the statutory presumption of validity . . . by 'clear and convincing evidence.'")

(quoting Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 96-97 (2011)).  A patentee moving for

summary judgment on the accused infringer's invalidity defense may rest on the presumption of

validity and the identification of those portions of the record that it believes demonstrate the

absence of a genuine issue of material fact.  Lecat's Ventriloscope, 351 F. Supp. 3d at 110 (citing

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

**D.      Invalidity – Analysis and Recommendation**

TOMY's summary judgment motion is laser focused on the insufficiency of Summer's

evidence of invalidity, arguing that "[t]he summary judgment stage is the put up or shut up

moment in litigation," Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 226 (1st Cir. 2013)

(internal quotation marks omitted), and that judgment on all of Summer's invalidity defenses

must be granted because Summer "has no evidence."  ECF No. 88 at 11.  I agree.

The case law is clear.  As to each of the theories of invalidity Summer has invoked, it is

well settled that the conclusory statements Summer has proffered are not enough.  See Nautilus,

Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 901 (2014) (claim that patent is invalid for

indefiniteness must be supported by evidence that the "specification delineating the patent, and

the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the

scope of the invention"); KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 418 (2007)

("'[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements.'")

(emphasis added) (quoting In re Kahn, 441 F.3d 977, 988 (Fed. Cir. 2006)); Acoustic Tech., Inc.

v. Itron Networked Sols., Inc., 949 F.3d 1366, 1373 (Fed. Cir. 2020) (for invalidity based on

anticipation, dispositive question is whether skilled artisan would reasonably understand or infer

from prior art reference that every claim limitation is disclosed in that single reference, for which

expert testimony may be substantial evidence); Streck, Inc. v. Rsch. & Diagnostic Sys., Inc., 665

F.3d 1269, 1291-92 (Fed. Cir. 2012) (without evidence showing that one skilled in the art could not follow the patent's teachings, reasonable jury could not have found the patents invalid for lack of enablement by clear and convincing evidence); Ariad Pharm., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010) ("the test for [written description] requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art").

Summer counters by pointing out (correctly) that there is no *per se* need for an expert to establish the defense of invalidity. Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc., 942 F.3d 1119, 1127 (Fed. Cir. 2019) ("The technology here – coated materials for cold weather and outdoor products – is easily understandable without the need for expert explanatory testimony.") (internal quotation marks omitted). That is, Summer is right that it is well settled that the clear and convincing evidence of invalidity is not required to come from an expert. E.g., Contour Optik, Inc. v. E'Lite Optik, Inc., No. CV-S-00-1116-PMP (PAL), 2005 WL 8161331, at *2 (D. Nev. June 15, 2005) (typically testimony concerning anticipation must be from one skilled in the art; however, expert testimony is not required when subject matter is easily discernible). Summer's problem is that it has not just failed to present expert support – rather, it has presented no support, nothing beyond its vague and conclusory interrogatory answer. There is nothing from a person skilled in the art and there is no "articulated reasoning with some rational underpinning to support the legal conclusion," as the Supreme Court required in KSR Int'l Co., 550 U.S. at 418 (internal quotation marks omitted). Not even the cited references are in the summary judgment record.

Such general and conclusory evidence does not suffice for a fact finder to conclude that the '209 Patent is invalid. See Koito Mfg. Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1151-52

(Fed. Cir. 2004) (merely submitting reference into evidence with general and conclusory testimony insufficient to support jury verdict that patent was anticipated and rendered obvious). Based on the foregoing, I recommend that TOMY's motion for summary judgment on Summer's affirmative defense of invalidity be granted.

## II.    INFRINGEMENT

Assuming the validity of the '209 Patent, I turn next to the set of motions addressing TOMY's claim that the Accused Tub infringed.  They may be briefly summarized.

TOMY's summary judgment motion asks the Court to enter judgment in its favor and against Summer with respect to infringement because, it contends, the undisputed facts establish that the Accused Tub meets every limitation of each of the asserted independent claims (Claims 1 and 30),[5] as well as those of dependent Claims 2-3, 7, 11 and 21.[6]  ECF Nos. 87-88.  In support of its infringement argument, TOMY relies on the infringement opinions of its technical expert, Mr. Charles Mauro, and Summer's responses to requests for admissions.  In its separate <u>Daubert</u> motion, TOMY asks the Court to exclude certain of the opinions supporting non-infringement of Summer's technical expert, Mr. Joseph Gordon, as irrelevant and unreliable.  ECF No. 84.

Summer's cross motion for summary judgment asks the Court to enter judgment in its favor and against TOMY because the undisputed evidence establishes non-infringement, *inter alia*, because the Accused Tub is not angular, as the '209 Patent claims, but rather is comprised of curved surfaces, as well as because the Accused Tub does not have "two seating surfaces disposed at differing inclinations and extending from respective back rests to distal edges joined at a bottom surface apex," which limitation is common to every claim of the '209 Patent that

---

[5] TOMY's expert, Mr. Mauro, did not opine that independent Claim 23 is infringed.  ECF No. 96-8 ¶¶ 18-19.  It is no longer in issue.  TSDF ¶ 7.

[6] TOMY also asserts dependent Claims 5 and 18 but has not moved for summary judgment on them.  TSDF ¶ 7.

TOMY has asserted.  ECF No. 99-1 at 2-3.  In support of its motion for summary judgment on

infringement, Summer relies on the opinions of its technical expert, Mr. Gordon.  In its separate

<u>Daubert</u> motion, Summer asks the Court to exclude all of the infringement opinions of TOMY's

technical expert, Mr. Mauro, as irrelevant and unreliable.  ECF No. 94.

### A.    <u>Infringement – Factual and Procedural Background</u>

#### 1.    <u>The '209 Patent and the TOMY Tub</u>

For many years, TOMY owned the '209 Patent and sold its TOMY Tub, which is marked

with the '209 Patent and, as TOMY claims, but Summer disputes, is covered by the '209 Patent.[7]

TSUF ¶¶ 1-2, 4; SSDF ¶ 2.  Walmart was one of TOMY's customers for the TOMY Tub.  TSUF

¶ 3.  TOMY claims, but Summer disputes, that the TOMY Tub had been one of the top selling

infant tubs for many years.  TSUF ¶ 8; SSDF ¶ 8.

The '209 Patent is directed to a multistage tub for bathing infants and toddlers, with

opposite facing seats for children of different stages of development.  TSUF ¶ 5; SSDF ¶ 5.  A

critical aspect of the invention as described in the '209 Patent's abstract is that it is configured to

enable "multiple tubs to nest particularly well, for efficient merchandising and storage."  '209

Patent Abstract, ECF No. 90-2 at 2; TSUF ¶ 7.  As expressed in asserted Claims 1 and 30, the

"upper and lower surfaces having matching shape across an overall extent of the tub so as to

---

[7] TOMY's expert, Mr. Mauro, opined that at least one claim of the '209 Patent covers the TOMY Tub.  ECF 96-8 ¶¶ 20, 51; ECF No. 91 ¶ 9.  Summer's expert, Mr. Gordon, was not asked to opine in response; indeed, Mr. Gordon used the TOMY Tub for a visual illustration to support his opinion that the Accused Tub's design – two seating positions on a single flat surface with a convex protrusion acting as a stop to prevent the child from sliding – differs materially from the '209 Patent's claimed limitation of two distinct seating surfaces that slope upward at differing inclinations to distal edges that join at the bottom surface apex.  ECF No. 86-1 ¶¶ 8, 38-41.  Summer's claimed disputation rests on its contention that Mr. Mauro's opinion regarding the TOMY Tub should be stricken because he did not measure the angles and failed properly to examine, for example, whether the TOMY Tub meets the limitation calling for two back rests that incline "with respect to the rim."  SSDF ¶ 2 (referencing '209 Patent, col. 6, line 36).  As discussed *infra*, this aspect of Summer's critique of the Mauro Report goes to the weight to afford the opinions; therefore, whether the '209 Patent covers the TOMY Tub is a matter for a fact finder.  To the extent that Summer's motion to preclude seeks to bar Mr. Mauro from testifying to this opinion, it is denied by the separate text order.

enable the tub to nest within an identical tub with a nesting space differential of less than about two inches (five centimeters)." '209 Patent, col. 6, lines 47-51.  One pivotal aspect of the shape of the tub derives from a limitation that is common to all of the '209 Patent claims in issue – that the opposing side walls form back rests from which the two seating surfaces extend upward at differing inclinations for the infant side and the toddler side ("for children seated in the tub in different orientations"), '209 Patent, col. 6, lines 38-39, with the seating surface edges ultimately joining each other at an apex formed by the joinder of the edges.  '209 Patent, col. 6, lines 41-44 ("the bottom surface having two seating surfaces disposed at differing inclinations and extending from respective back rests to distal edges joined at a bottom surface apex").  The Court's claims construction decision addresses each aspect of this critical limitation.

First, the claims construction specifies that the two distal edges of the two seating surfaces join to each other, edge-to-edge, at the "bottom surface apex," which is the highest portion of the bottom surface of the tub.  <u>Summer</u>, 2019 WL 4596780, at *6-8.  In so holding, the Court rejected TOMY's argument that the '209 Patent covers indirect joinder of the seating surface edges, for example by the edges joining on either side of an intervening structure.[8]  <u>Id.</u> As the Court held, "'joined at,' as the term appears unadorned by further definition in Claims 1 and 30, describes clearly the joinder of the two distal edges to each other at the apex; it does not encompass indirect joinder of the two seating surfaces to a third intervening structure."  <u>Id.</u> at *8. Regarding the "apex," the claims construction makes clear that it is not a single high point, but rather is the raised area where the two seating edges meet; as the Court held, it is a "curved surface stretching across most of the tub's width," "spanning the width of tub bottom," <u>id.</u>,

---

[8] The '209 Patent's specification, col. 2, lines 64-65, and dependent Claim 18 mention a "central bottom surface portion," as an extension of the toddler-side seat surface.  As the Court has construed the Claims, this "central bottom surface portion" is not an "intervening structure," which is ruled out by the wording of the independent claims.  <u>Summer</u>, 2019 WL 4596780, at *6-8.

though it does not extend across the entire width of the tub but rather is a horizontal surface formed by the joinder of the edges of the two seating surfaces.  TSUF ¶¶ 65-67; see ECF No. 86-4 at 4.  As described in the specification of the '209 Patent, where the infant-side seating surface edge joins the apex, the structure serves the function of being "received behind the knees of the infant."  '209 Patent, col. 5, lines 49-50.

The Court's claim construction also focused on the term "seating surface," ultimately holding that, as used in Claim 1, the meaning is clear ("ordinary and customary meaning[]").  Summer, 2019 WL 4596780, at *6 (internal quotation marks omitted).  The Court further held that, in the context of the claims in issue, the seating surfaces encompass the upwardly inclined (for the infant side) and the initially horizontal, but then more gently upwardly inclined (for the toddler side) portions of the bottom surface that extend from the back rest to the apex.  Id. at *5.  In so holding, the Court rejected, because it would "darken[] the clouds of confusion," TOMY's proposal to redefine "seating surface" as limited to the part of the seat used to support the posterior or buttocks of the user.  Id. & n.5.  Importantly, what the Court rejected was substituting for the clear and unambiguous term "seating surface," a muddy definition based on what supports the ambiguously described ("posterior" or "buttocks") body parts of the squirming infant or toddler who is being bathed.  In holding that the term "'seating surface(s)', as described in the '209 claims, is clear and does not require further construction," id. at *6, the Court did not reject the core concept that a seat functions as the part "on which one rests in sitting."  See ECF No. 94-1 at 40 (quoting Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/seat) (last visited August 31, 2022).  That concept is embedded in the Court's construction that, as used in the '209 Patent, "seating surface" is interpreted consistent with its plain meaning.  Summer, 2019 WL 4596780, at *6.

12

The '209 Patent's Detailed Description, which describes the preferred embodiment, *inter alia*, includes Figures 9 and 13, reproduced below.  These drawings show, from above and from the side, the two seating surfaces rising at differing inclinations, whose edges join at the apex, which extends across the width of the joinder of the edges:



ECF No. 90-2 at 6, 7.

      2.    <u>Summer's Predecessor Tubs, the Accused Tub and the Redesigned Tub</u>

Prior to 2017, Summer manufactured and sold two differently designed bathing tubs, both featuring opposite facing seats for infants and toddlers; however, when stacked, these tubs nested with an incremental height that was greater than the TOMY Tub when it is comparably stacked. TSUF ¶¶ 48, 50, 51.  These Summer products referenced features that would be incorporated into the Accused Tub.  TSUF ¶ 48; SSDF ¶¶ 53, 79.  In particular, as clearly shown in documents included by TOMY in the summary judgment record and by the exemplar of the Accused Tub (Exemplar Ex. A), both of Summer's predecessor tubs and the Accused Tub all feature opposing infant/toddler seating positions with a convex protruding central "horn" or "hump,"[9] "to prevent slipping."  ECF No. 92 at 8; ECF No. 90-19; Exemplar Ex. A.  As explained by one Summer employee, the Accused Tub's "vertically contoured seat positioner keeps baby in place . . . [t]hat's the horn."  ECF No. 90-9 at 4; ECF 121-1 at 2.  Summer tried to sell its predecessor multistage bathing tubs to Walmart but was unable to do so.  TSUF ¶¶ 49, 72.  With no evidence presented by either party directly from Walmart, the reasons why Summer's sales efforts were not successful are hotly disputed.

In 2017, Summer began an expedited project to develop a new multistage infant tub that Walmart would buy to displace the TOMY Tub.  TSUF ¶¶ 54-55.  Summer's designers referenced the TOMY Tub, but also considered an array of other tubs (including Summer's predecessor tubs), focusing on characteristics such as sizing, feedback from customer reviews, testing children in competitor's tubs and more.  TSUF ¶¶ 77-79; SSDF ¶ 79.  The result of this project was the Accused Tub, which undisputedly features many of the limitations of Claim 1 of

---

[9] This is referred to as a "horn" in Summer's design document, a term that is analogous to the term "horn" as used for the projecting part of a saddle in front of where the rider sits.  ECF No. 92 at 6, 8.  In testimony, Summer designers called this structure a "hump."  E.g., ECF No. 90-6 at 9-10.  Mr. Gordon's expert Report describes it as a "convex protrusion in between the respective seating positions . . . similar to the pommel on a saddle, between the legs of the toddler or infant"; as Mr. Gordon opines, it "is not part of the seating surface but acts as a stop to prevent the child from sliding down the tub."  ECF No. 86-1 ¶¶ 38-39.  Mr. Mauro's deposition testimony is consistent in describing the hump "almost like a stop."  ECF No. 93-1 at 45.

the '209 Patent, including its nesting/stacking efficiency, TSUF ¶¶ 17-21, 24-25, 33-35, 39, 42-43, 45, but also reflects characteristics of Summer's predecessor tubs, like the central hump. Whether the Accused Tub meets other key limitations of the '209 Patent is hotly disputed; in particular, Summer points to the Accused Tub's lack of angles (the Accused Tub has complex, freeform curves) and lack of two distinct seating surfaces (one for an infant, one for a toddler) at different inclinations whose edges meet at an apex. SSDF ¶¶ 22-23, 26-31, 47. Also disputed is whether the Accused Tub meets the limitation claimed by the '209 Patent and found in the TOMY Tub, which calls for troughs formed within wales that rest on horizontal surfaces like a sink. SSDF ¶¶ 36-38, 40-41. TOMY contends, but Summer disputes, that this feature enhances the structural integrity of the tub. SSDF ¶¶ 85-87. Finally, Summer contends that the Accused Tub has ribs, clip receptacles and feet that differentiate its upper from its lower surface, contrary to Claim 1's limitation of "upper and lower surfaces having matching shape" to enhance the nesting space differential. SSDF ¶¶ 32, 44 (referencing '209 Patent, col. 6, lines 47-48).

Summer's expedited effort to design and manufacture a multistage bathing tub that Walmart would buy was successful – while the precise sequence is disputed, the record reflects that the date of the first sale of the Accused Tub was September 22, 2017, and that it was launched at Walmart in October 2017. ECF No. 116-1 at 10 & n.24. TOMY's cease-and-desist letter was sent on November 14, 2017. ECF No. 1 ¶¶ 4, 18. Summer responded by denying infringement and just thirteen days later (on November 27, 2017) by filing this case seeking a declaration of non-infringement.

In addition to filing this case, in 2018, Summer launched an effort to redesign the Accused Tub. ECF No. 112-5 at 3. This quickly led to the launch of the Redesigned Tub, Exemplar Ex. B, which differs from the Accused Tub only in that it has a rib added to the

15

underside that causes it to stack with a nesting space differential that is more than the nesting space differential of less than about two inches, as claimed by the '209 Patent.  Id. at 3-4; see ECF No. 112-8 at 3 (redesign took three weeks and cost $6,600).  It is undisputed that Summer's Redesigned Tub began to be sold to Walmart no later than October 2018.  See ECF No. 125 at 2. Whether it was sold or available for sale earlier is disputed; Summer claims that it was introduced into the market in April 2018.  Id.  Summer notes that the Redesigned Tub was sent to TOMY's lawyer in August 2018; on September 10, 2018, TOMY confirmed that the change to the stacking characteristic had eliminated any potential for infringement.  ECF No. 98-2 at 2.

### 3.   TOMY's Evolving Theories of Infringement

While it is undisputed that the Accused Tub undisputedly meets the '209 Patent limitations related to stacking height, TOMY has struggled to explain how it also meets the '209 Patent's ubiquitous limitation of "two seating surfaces disposed at differing inclination and extending from respective back rests to distal edges joined at a bottom surface apex."  '209 Patent, col. 6, lines 41-44.  TOMY has had particular difficulty in characterizing the Accused Tub's central hump and its essentially horizontal seating surfaces, which lack clear edges but flow into each other forming a single planar surface, so that they meet this limitation.

Prior to claims construction, TOMY's cease-and-desist letters and interrogatory responses presented somewhat vague and inconsistent descriptions of how this limitation was met.  ECF No. 94-1 at 8-9 (depictions of various iterations of TOMY's labeling of Accused Tub to support claim of infringement).  TOMY's Fed. R. Civ. P. 30(b)(6) witness was pressed to clarify; he tried to solve the puzzle by testifying that the Accused Tub's "seating surfaces" are the horizontal surfaces on either side of the tub (without explaining how they are "at differing inclinations"), while he labeled as the "edges" of the seating surfaces the nearly vertical sides of

16

the central hump and the "apex" as the top of the central hump.  SSUF ¶¶ 18-22.  As he explained, the convex hump is an intervening structure that joins the edges: "They are joined by the apex.  In essence it joins them."  SSUF ¶ 22.  This theory of infringement was abandoned when the Court held that "'joined at'. . . describes clearly the joinder of the two distal edges to each other at the apex; it does not encompass indirect joinder of the two seating surfaces to a third intervening structure."  Summer, 2019 WL 4596780, at *8.

    After claims construction, TOMY's technical expert, Mr. Mauro, presented a new theory to evidence that the Accused Tub meets this limitation.  Mr. Mauro's difficulty with this task is clear in his Report, which has two versions of this opinion, one based on a misinterpretation of the Court's claims construction decision.[10]  ECF No. 96-8 ¶ 42 & Ex. C (ECF No. 96-8 at 48-49).  In this clearly erroneous version, Mr. Mauro labels the toddler-side seating surface as the horizontal area; he opines that this connects to an intervening structure, which he defines as the near-vertical toddler side of the hump; he further opines that this intervening structure connects to the top of the hump, which he labels as the "apex."  ECF No. 96-8 at 49.  For the infant side, Mr. Mauro ignores the horizontal portion of the Accused Tub's infant side, instead labelling the steep – almost vertical – infant-side of the hump as the infant seating surface.  Id.  Mr. Mauro's other version of this opinion revises his labeling of the Accused Tub's toddler-side seating surface as encompassing both the horizontal area and what he had opined (in his other version of this opinion) is an intervening structure, the nearly vertical, convex toddler side of the hump.  Id. at 48.  Mr. Mauro also struggled during his deposition – contradicting his own Report, he

---

[10] As explained in TOMY's brief, Mr. Mauro read the District Court's adoption of my claims construction report and recommendation as accepting only the summary on page 21, allowing him to ignore the holding that the distal edges do not join at an intervening structure.  ECF No. 113 at 18-19.  TOMY has not defended this approach, which is clearly incorrect as the District Court expressly held, "The Magistrate's analysis is a painstaking, thorough and deliberate analysis of the exhibits, the arguments and the relevant law.  I therefore ADOPT it in its entirety."  Summer, 2020 WL 1531403, at *1 (emphasis added).

testified that the Accused Tub's infant-side hump functions "almost like a stop," ECF No. 93-1 at 45, and conceded that the Accused Tub's toddler-side seating surface is "basically horizontal." Id.

    4.  <u>Summer's Theory of Non-Infringement</u>

   Summer's evidentiary foundation for its position that the Accused Tub does not infringe rests on the Tub itself and on the Report of its technical expert, Mr. Gordon.  ECF No. 86-1.  In brief, Mr. Gordon opines that the Accused Tub's structure and function are materially different from what is claimed in the '209 Patent.  First, he contrasts the Accused Tub's "freeform surfaces with compound curvature," with the '209 Patent's focus on angles and inclinations. ECF No. 86-1 ¶¶ 36, 37.  Second, focused on the pivotal limitation of "two seating surfaces disposed at differing inclinations and extending from respective back rests to distal edges joined at a bottom surface apex," '209 Patent, col. 6, lines 41-44, Mr. Gordon opines that it is not met by the Accused Tub's seating surfaces, which feature two generally horizontal seating positions at either side of a single flat surface that are not at differing inclinations and that lack "distal edges" that join to each other.  ECF No. 86-1 ¶¶ 37-47.  Instead of an "apex" formed by the joinder of the edges of the two differently inclined seating surfaces, the Accused Tub's seating surfaces are generally horizontal, flowing into each other with a central convex protrusion that "acts as a stop to prevent the baby from sliding down the tub."  Id. ¶ 40.  This convex protrusion rises nearly vertically from the center of the horizontal area comprising the combined seating surfaces and "therefore play[s] no role as a seating surface."  Id.  It "exists in between the baby's legs, acting as a stop, and is not part of the seating surface of either seating position."  Id. ¶ 38. According to Mr. Gordon, these features of the Accused Tub differ not only from the express language of the '209 Patent's limitation but also reflect structural and functional differences

between the '209 invention and the Accused Tub: "[t]he TOMY Tub positions the baby in each of the locations by providing an inclined seating surface, with the buttocks and the back of the legs <u>grounded on each inclined surface</u> preventing the baby from sliding," while "the Accused Tub employs a convex protrusion that "exists <u>in between</u> the baby's legs, acting as a stop . . . to prevent the baby from sliding down the tub." <u>Id.</u> ¶¶ 38-39 (emphasis added).

### B.   <u>Infringement – *Daubert* Motions</u>

Before tackling the parties' dueling infringement summary judgment motions, the Court must first address whether any portion of the expert opinions of either Mr. Mauro or Mr. Gordon supporting their respective positions of infringement/non-infringement should be excluded pursuant to <u>Daubert</u>.

In considering the parties' <u>Daubert</u> motions, the Court must determine whether the proffered expert testimony meets the requirements of Fed. R. Evid. 702 as based on "scientific, technical, or other specialized knowledge [that] will assist the trier of fact" and that it is reliable, relevant and helpful to the case at hand.  <u>Daubert</u>, 509 U.S. at 588, 597; <u>ADP Marshall, Inc. v. Noresco, LLC</u>, 710 F. Supp. 2d 197, 225-26 (D.R.I. 2010).  Rule 702/<u>Daubert</u> requires the Court to act as a gatekeeper to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . properly can be applied to the facts in issue."  <u>Beacon Mut. Ins. Co. v. Onebeacon Ins. Grp.</u>, 253 F. Supp. 2d 221, 222 (D.R.I. 2003) (quoting <u>Daubert</u>, 509 U.S. at 592-93, and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 148 (1999)).  Experts tie observations to conclusions through the use of "general truths derived from . . . specialized experience."  <u>Kumho Tire Co.</u>, 526 U.S. at 148 (quoting Learned Hand, <u>Historical and Practical Considerations Regarding Expert Testimony</u>, 15 Harv. L. Rev. 40, 54 (1901)).  "[T]he judge's task . . . is to ensure that the expert's testimony both rests on a reliable foundation and is relevant

19

to the task at hand." Cruz-Vazquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 57 (1st Cir.

2010) (internal quotation marks omitted); Wai Feng Trading Co. Ltd v. Quick Fitting, Inc., C.A.

No. 13-33WES, 2018 WL 6726557, at *7 (D.R.I. Dec. 21, 2018).  That the factual underpinning

of the expert's opinion is weak is a matter affecting the weight and credibility of the testimony –

a question to be resolved by the jury.  Martinez v. United States, 33 F.4th 20, 24 (1st Cir. 2022).

However, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to

admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."

McGovern ex rel. McGovern v. Brigham & Women's Hosp., 584 F. Supp. 2d 418, 424 (D. Mass.

2008) (internal quotation marks omitted).  In particular, expert testimony that conflicts with the

Court's claim construction is inadmissible and should be excluded.  See MarcTec, LLC v.

Johnson & Johnson, 664 F.3d 907, 913 (Fed. Cir. 2012) (discussing exclusion of expert

testimony that "ignored the court's claim construction" as "inadmissible under Daubert"); Finjan,

Inc. v. Secure Computing Corp., 626 F.3d 1197, 1207 (Fed. Cir. 2010) (discussing with approval

the district court's decision to exclude expert testimony that "attempted to resurrect a claim

construction that the district court already rejected").

    1.    *Daubert* Motion to Exclude Infringement Opinions of TOMY's Technical Expert, Mr. Mauro

As the evidentiary foundation for its claim that the Accused Tub infringes, TOMY relies

on the infringement opinions of Mr. Mauro, its technical expert, who provided an extensive

Report (ECF No. 96-8), testified at a deposition and provided a declaration (ECF No. 91) in

support of TOMY's motion for partial summary judgment.  Mr. Mauro's impressive credentials

in product design and development render him well-qualified to opine as an expert on the issues

in this case.  See ECF No. 96-8 at 23-43.  Summer has not argued that his qualifications are a

reason to exclude his opinions.  Rather, Summer contends that the Court should preclude him

from testifying regarding infringement because: (1) Mr. Mauro failed to measure the angles of relevant inclinations and introduced curves that are missing from the '209 Patent based on his opinion that a person skilled on the relevant art would understand that an infant tub would not have completely flat support surfaces and that curves are implicit in such a design; and (2) to conform to the structures claimed in the '209 Patent, the Mauro analysis ignores the actual structure of the Accused Tub, including its essentially horizontal seating surfaces that flow into each, instead labeling (illogically and in conflict with the Court's claim construction) the convex side of the vertical wall of the central hump as part of the seating surface for the toddler and the other vertical wall of the central hump as the entirety of the seating surface for the infant.

I begin the Daubert analysis by focusing on Summer's critique that Mr. Mauro failed properly to consider that TOMY's '209 Patent claims an angular/linear invention, while Summer's Accused Tub is a complex curvy, fluid design lacking the flat surfaces, straight lines and measurable angles claimed in the '209 Patent.  To support his perspective, Mr. Mauro opined (and Mr. Gordon disagrees) that a person skilled in the relevant art would understand that an infant tub would not have completely flat support surfaces; that is, some curvature is implicit in such a design.  TSUF ¶ 46.  As Mr. Mauro testified, "here is a product highly optimized to minimize the stress on infants and toddlers, and these types of seats have to be articulated, curved in such a way that . . . they are also comfortable."  ECF No. 93-1 at 41.  Explaining further, he testified:

> [T]he way it's done in seating design is you take the – a curved seat back is curved, it's curved for anatomical reasons.  It's curved, and you can take the lower – forward projecting point and upper projecting point, and you calculate the angle.  In seat design when you say incline angle of the seat back or the seat, which happens to be the seat back, that's the way in which you would define the seat back angle or the inclination angle, but the seat itself, the design, is always curved.

Id.

> [W]hen you talk about a seating surface . . . what you're really talking
> about is the composite of the articulation of the surfaces themselves.  So
> it's not like a straight line, it's never a straight line.  It's a combination.

Id. at 54.  He explained his failure to actually measure the "angles" of the Accused Tub: "[w]hen

I look at these tubs, my background in human factors informs those angles and those surfaces."

See id. at 41.  Therefore, this testimony is appropriately grounded in Mr. Mauro's expertise as a

product designer and is sufficiently reliable and relevant to be helpful to the jury.  Summer's

attack on Mr. Mauro's approach may well impact the weight of this evidence, but not its

admissibility.  Summer's Daubert motion to exclude any of the Mauro opinions on this basis is

denied.

Summer hits the mark, however, with its focus on Mr. Mauro's illogical, commonsense

defying and contrary-to-the-Court's-claims-construction attempt to force a "square peg" – the

Accused Tub's seating design (a single essentially horizontal bottom surface extending from one

back rest to the other with a convex central hump rising vertically in the center) – into the "round

hole" of the '209 Patent, which calls for "two seating surfaces disposed at differing inclinations

and extending from respective back rests to distal edges joined at a bottom surface apex."  '209

Patent, col. 6, lines 41-44.  Once the Court rejected TOMY's argued-for interpretation that the

'209 Patent's pertinent limitation can be met if the edges are joined by some unspecified "third

intervening structure," Mr. Mauro had to force the actual structure of the Accused Tub into the

words (as construed) of the '209 Patent so as to make it meet this claim.  See Summer, 2019 WL

4596780, at *8.  To do so, Mr. Mauro was compelled to ignore the Court's construction that the

term "seating surface" is clear and, as used in the '209 Patent, must be interpreted consistent with

its ordinary and plain meaning.  Id. at *5-6.

The result is an opinion that effectively deletes "seating" from the term.  Instead, Mr. Mauro labels the two nearly <u>vertical</u> sides of the Accused Tub's "hump" or "convex protrusion" as the entirety (for the infant) and a material part (for the toddler) of the "seating surface."  That is, for the toddler, Mr. Mauro calls the vertical portion of the hump, rounded in a convex shape to separate a child's legs (as Mr. Gordon opined), an integrated part of the "seating surface," claiming illogically that it is shaped to function as a seat to support the toddler's weight.  ECF No. 96-8 ¶ 50.  For the infant, Mr. Mauro's opinion is even more illogical: instead of the horizontal portion of the bottom surface on the infant side of the Accused Tub, Mr. Mauro recasts the vertical wall of the hump as the infant's seating surface, a conclusion that defies any commonsense notion of how a baby sits in a tub.  <u>Id.</u>  Put differently, a seating surface for a toddler or infant, in the plain and ordinary meaning of the term, simply does not reference a surface that is vertical or nearly so.

Tellingly, Mr. Mauro's Report, deposition and declaration are devoid of any description of the methodology or analysis used to reach these illogical conclusions, nor does he provide any explanation for how his expertise supports them.  Indeed, his deposition testimony reflects his discomfort in that his substantive answers describe the infant side of the central hump not as the infant's seat, but as a stop to prevent the infant from sliding, and limn the seating surface for the toddler as a "basically horizontal seating surface," that is, not including the convex vertical toddler side of the hump:

> [As to the infant,] the bottom portion of their buttocks rests against the surface. So it's almost like a stop, if you will, where they slide against. . . .  The infant side has got sort of a radius to it, which is a combined inclination. . . .  [As to the toddler], the pelvis is sitting on the, basically not completely horizontal, but basically horizontal seating surface. . . .  [The inclination of the toddler side seating surface is] at a slight angle . . . to sort of keep the weight balanced, keep the toddler from sliding forward with too much force against the center raised section.

ECF No. 93-1 at 45.  Thus, far from supporting his own opinions, Mr. Mauro's testimony corroborates Mr. Gordon's description of the Accused Tub's hump/seating surface structure and function.  See ECF No. 86-1 ¶ 39 ("The convex protrusion is not part of the seating surface but acts as a stop to prevent the child from sliding down the tub.").  Importantly, the Court construed "seating surface(s)," as the term is used in the '209 Patent, as retaining its ordinary and customary meaning.  Summer, 2019 WL 4596780, at *5-6.  In calling each of the near-vertical walls of the Accused Tub's hump a seating surface, Mr. Mauro has ignored this construction.

To conclude, Mr. Mauro's opinion that the Accused Tub meets, literally or by equivalence, the '209 Patent's pivotal limitation – "two seating surfaces disposed at differing inclinations and extending from respective back rests to distal edges joined at a bottom surface apex" – because it features a vertical convex structure culminating in an apex that does not conceivably fit the plain meaning of a "seating surface" amounts to nothing more than an illogical and opportunistic "*ipse dixit* of the expert" that clashes with the Court's claims construction.  McGovern, 584 F. Supp. 2d at 424 (internal quotation marks omitted).  As such, this opinion is inadmissible and testimony regarding it should be excluded.  See MarcTec, LLC, 664 F.3d at 913; Finjan, Inc., 626 F.3d at 1207.  To the extent that the Mauro Report and declaration contain infringement opinions (both his theory of literal infringement and his reliance on the doctrine of equivalents) that are built on this illogical construct, Summer's motion to exclude them pursuant to Daubert is granted.[11]

2.   *Daubert* Motion to Exclude Infringement Opinions of Summer's Technical Expert – Mr. Gordon

---

[11] Specifically, this determination results in the exclusion of the following opinions: Mauro Report, ¶¶ 18, 19, 35-37, 41-43, 47, 49-50, 62 & Ex. C Claim 1 (ECF No. 96-8 at 48-49); Claim 17 (ECF No. 96-8 at 56); Claim 18 (ECF No. 96-8 at 57); Claim 30 (ECF No. 96-8 at 61-62); Mauro Decl. ¶ 8.

Mr. Gordon, Summer's technical expert, provided an extensive Report (ECF No. 86-1) and testified at a deposition regarding his opinions.  As a threshold matter, like Mr. Mauro, Mr. Gordon's credentials as an expert in product design and development, including as the inventor on over fifty patents and experience in designing, *inter alia*, pediatric products, are impressive and unchallenged by TOMY.  See ECF No. 86-1 at 2, 35-37; ECF No. 86-3 at 3.  TOMY nevertheless has moved to exclude substantial portions of the Gordon Report because: (1) the Report does not label the parts of Accused Tub in a manner that conforms to the language of the '209 Patent as construed by the Court; (2) the Report seeks to distinguish the angles, planes, points and lines of the '209 Patent from curves of the Accused Tub; (3) the Report uses the TOMY Tub and Computer-Aided Drawings ("CAD") of the Accused Tub to illustrate design and functional differences between the '209 Patent claims and the Accused Tub; (4) the Report improperly relies on prosecution history; (5) the Report's critique of the Mauro Report's treatment of the doctrine of equivalents is an improper application of the legal standard for that doctrine; and (6) the Report improperly rebuts the Mauro opinion on Claim 17, which Mr. Mauro included in his Report in error.[12]

The Gordon infringement opinions are based on Mr. Gordon's expert analysis of the Accused Tub and its CAD drawings compared to the asserted claims in the '209 Patent as construed by the Court.  Mr. Gordon also relied on his observations of the TOMY Tub.  ECF No.

---

[12] During the hearing on the motions, TOMY brought up a new argument – that the entire Gordon Report must be excluded as hearsay for purposes of summary judgment because it is authenticated by a declaration of counsel and not by a declaration signed by Mr. Gordon.  That has never been the practice in this Court, nor it is mandated by Fed. R. Civ. P. 56.  See Chase v. Corning, Inc., No. 14-cv-392-JD, 2014 WL 5511117, at *3 (D.N.H. Oct. 30, 2014) (to preclude consideration of evidence at summary judgment, Rule 56 requires that objecting party must show it "cannot be presented in a form that would be admissible in evidence"; because experts can appear at trial and testify, expert report may be considered at summary judgment despite lack of sworn authentication from expert).  I reject this argument; discovery is expensive enough without adding make-work.  See Joseph v. Lincare, Inc., 989 F.3d 147, 156 (1st Cir. 2021).

86-1 ¶¶ 32-33.  Mr. Gordon's Report is a rebuttal to the Mauro Report; it includes Mr. Gordon's reasons for disagreement with some of Mr. Mauro's conclusions.

TOMY's most significant challenge attacks the portion of the Gordon Report that focuses on the bottom surface of the Accused Tub and describes it as having opposing seating positions that are on either side of a single flat bottom surface, with the hump or "convex protrusion" rising vertically in the center of the bottom surface.  Id. ¶¶ 37-38.  Mr. Gordon contrasts this configuration with the '209 Patent's Claim 1, which calls for "two seating surfaces disposed at differing inclinations and extending from respective back rests to distal edges joined at a bottom surface apex."  Id.; see '209 Patent, col. 6, lines 41-44.  Mr. Gordon opines that the central convex protrusion is "not part of the seating surface but acts as a stop to prevent the child from sliding down the tub."  Id. ¶ 39.  He highlights the geometric shape of the convex protrusion: a rounded arc on the toddler side to go between the legs, while on the infant side, a vertical wall that functions as a stop.  Id.  Based on these characteristics, Mr. Gordon opines that the convex protrusion "play[s] no role as a seating surface."  Id. ¶ 40.

TOMY argues that Mr. Gordon sidesteps the Court's claims construction through his stated preference for the term "seating position" instead of "seating surface" as a more accurate descriptor of the Accused Tub to emphasize that (in contrast to the '209 Patent) it has a single flat bottom surface, one side of which is a seat for the infant, and the other side of which is a seat for the toddler.  ECF No. 86-1 ¶ 37.  TOMY points out that, in its responses to TOMY's requests for admission, Summer accepted the term "seating surface," and admitted that "the Accused Product includes a bottom surface having two seating surfaces."  ECF No. 90-20 at 5.  Summer counters that its interrogatory answer amplified on the point, emphasizing (consistent with the Gordon opinion) that the Accused Tub's seating surfaces "are not distinct surfaces," ECF No.

86-4 at 4, and that the bottom surface of the Accused Tub is a "single, essentially planar surface" that has different "seating surfaces," id. (one a toddler-side seating position and the other an infant-side seating position), lacking distinct edges that meet at a bottom surface apex as the '209 Patent requires.  See SSDF ¶¶ 26-31.  I find that Mr. Gordon's expressed preference, in regard to the Accused Tub, for "seating position" instead of "seating surface" is a matter of semantics, a distinction without difference, as TOMY concedes.  ECF No. 85 at 5.  It does not amount to a rejection by Mr. Gordon of the Court's claims construction, which applies not to the Accused Tub but to the '209 Patent.  TOMY is free to cross examine Mr. Gordon about his quibble with the vocabulary that Summer (in its admissions) accepted.  It is not a reason to exclude any portion of the Gordon report.

TOMY also challenges the other major theme of the Gordon Report – that the Accused Tub consists of freeform surfaces with compound curvature, which contrasts with the '209 Patent's emphasis on angles and planes.  ECF No. 86-1 ¶ 36.  In Mr. Gordon's opinion, the back rests and other surfaces of the Accused Tub cannot be defined by a single angle of incline, as Claim 1 requires.  Id.  As I found in my analysis of Summer's Daubert challenge to Mr. Mauro's opinion, supra, this is quintessential fodder for the fact finder; it is not a reason to exclude the opinions.

TOMY next asks the Court to exclude Mr. Gordon's helpful (to a fact finder) use of photographs of the Accused Tub as compared to the TOMY Tub.  For each tub, the respective photographs depict the pooling of a small amount of water to illustrate that, consistent with the '209 Patent's limitation calling for two distinct seating surfaces at differing inclinations, the TOMY Tub's water pools in two distinct areas, while the Accused Tub obviously has a single bottom surface all on the same plane, resulting in a single pool of the water surrounding the

convex protrusion.  ECF No. 86-1 ¶ 41.  Mr. Gordon's limited use of the TOMY Tub for this illustration does not breach the principle that it is generally error to determine infringement by comparing an accused product to the patentee's commercial embodiment of the invention. Zenith Labs., Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1423 (Fed. Cir. 1994).  Such a comparison is not error, but is permissible to support infringement arguments when, as TOMY claims, the commercial embodiment meets all of the limitations of at least one claim.  TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc., 920 F.3d 777, 788-89 (Fed. Cir. 2019) (with "cautionary instructions sufficient to mitigate any potential jury confusion," district court did not err in allowing use of commercial embodiment to respond to product-to-product comparison "by demonstrating that [it] didn't perform the way [the patentee's] expert described"); Adams Respiratory Therapeutics, Inc. v. Perrigo Co., 616 F.3d 1283, 1289 (Fed. Cir. 2010) ("when a commercial product meets all of the claim limitations, then a comparison to that product may support a finding of infringement").  Therefore, the final determination regarding this aspect of the Gordon opinions must be made at trial; if the fact finder accepts TOMY's position that the TOMY Tub is a "commercial product [that] meets all of the claim limitation," id., Mr. Gordon's use of it for an illustrative comparison is not junk science.  It should be admitted with an appropriate instruction.

Also helpful to a fact finder is Mr. Gordon's use of the Accused Tub's CAD drawings to illustrate, for example, the complex curves of the Accused Tub, as well as that the edges of the Accused Tub's seating surfaces do not join at a bottom surface apex (as the '209 Patent requires) in that the side portions of the bottom surface extend from one back rest to the opposing back rest.  ECF No. 86-1 ¶¶ 43-47, 69.  TOMY's attack on Mr. Gordon's reliance (consistent with his expertise in product design) on the CAD drawings as a reason to exclude this portion of his

Report is a non-starter.  The CAD files were produced by Summer in discovery and were provided to Mr. Gordon who used them for his Report; Mr. Mauro could have done the same had he wished to do so.  See ECF No. 105 at 27.  The resulting images are helpful illustrations of the design and functional differences between the Accused Tub and the limitations claimed by '209 Patent.  TOMY's motion to exclude the CAD drawings in the Gordon Report is denied.

Equally unavailing is TOMY's invocation of Daubert to exclude the Gordon Report opinion on the doctrine of equivalents, which was provided in rebuttal to Mr. Mauro's opinion on the doctrine.  While TOMY is right that Mr. Gordon has not himself purported affirmatively to apply the doctrine, as Summer points out, that is not the point – Mr. Gordon is simply offering his critique of Mr. Mauro's application of the doctrine.  ECF No. 86-1 ¶ 91 ("Mr. Mauro's analysis of the Accused Tub erases and reads out the actual limitation in the claims language of the '209 Patent.").  TOMY's motion to exclude this part of the Gordon Report is denied.

Less significantly, the parties spar over the admissibility of Mr. Gordon's reliance on prosecution history to corroborate his opinion that the Accused Tub's little "feet" mean that it does not meet the '209 Patent's limitations in issue calling for "wales." '209 Patent, cols. 6-10. TOMY argues that Mr. Gordon lacks the expertise as a non-lawyer to consider the prosecution history.  TOMY also contends that the Report is misusing this aspect of the prosecution history, which applies only to a Claim (23) that TOMY pressed in its counterclaim of infringement, ECF No. 8 ¶ 30, but which Mr. Mauro did not opine is infringed, ECF No. 96-8 ¶ 16.  While TOMY is right that the law of claims construction comes from the Court, TOMY overlooks that Mr. Gordon's expertise is derived in part from his status as the inventor on fifty patents and he is certainly able to consider the patent, the claims construction and the prosecution history.  If Mr.

Gordon has misapplied this aspect of the prosecution history, his error may be exposed on cross examination.  For now, I decline to find that ¶¶ 54-55 of the Gordon Report are inadmissible.

Also less significant is TOMY's challenge to Mr. Gordon's response to Mr. Mauro's analysis of Claim 17, which Mr. Mauro did in error.  That is, the Mauro Report sets out Mr. Mauro's opinion that the Accused Tub meets the limitations of dependent Claim 17, which TOMY has made clear is not being asserted.  ECF No. 96-8 at 56.  Finding a Claim 17 opinion in the Mauro Report despite TOMY's seeming failure to assert it, in an abundance of caution, Mr. Gordon performed a detailed analysis of why Claim 17 is not met in response to Mr. Mauro's analysis.  ECF No. 86-1 ¶¶ 76-86.  TOMY has moved to strike Mr. Gordon's analysis of Claim 17 as surplusage that will confuse the jury.  Summer argues that the two experts' respective analyses of Claim 17 are fodder for cross examination of Mr. Mauro and that Mr. Gordon's rebuttal analysis should not be excluded.  I find that it is premature to make this determination.  At trial, the jury may well hear about Claim 17, making Mr. Gordon's analysis relevant.  Or Claim 17 may have disappeared from the case so that its inclusion in the Gordon expert report would be confusing.  That determination should be made at trial.  For now, TOMY's motion to exclude ¶¶ 7, 76-86 of the Gordon Report is denied without prejudice.

In sum, Mr. Gordon was tasked, *inter alia*, with assessing the structure, design and functional characteristics of the Accused Tub and, as particularly pertinent to the pending motions, with determining whether it includes "two seating surfaces disposed at differing inclinations and extending from respective back rests to distal edges joined at a bottom surface apex," a limitation that is common to every claim of the '209 Patent that TOMY contends has been infringed.  For the reasons stated above, I find that Mr. Gordon did not misinterpret or go outside of the Court's claims construction and that his methods are sound and have resulted in

opinions that are reliable and relevant, with illustrations and comparisons that will be helpful to the jury.  Therefore, by separate text order, I have denied TOMY's <u>Daubert</u> motion to exclude any part of the Gordon Report.  <u>See</u> <u>Bombardier Recreational Prod. Inc. v. Arctic Cat Inc.</u>, Civil No. 12-2706 (JRT/LIB), 2017 WL 758335, at *6 (D. Minn. Feb. 24, 2017); <u>Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.</u>, 87 F. Supp. 3d 928, 940 (N.D. Cal. 2015).

### C.    <u>Infringement – Summary Judgment Motions</u>

I turn next to the parties' dueling infringement summary judgment motions.  TOMY asks for judgment of infringement of independent Claims 1 and 30, and dependent Claims 2, 3,7, 11, and 21.  ECF No. 87 at 1.  Summer asks for judgment of non-infringement because, it contends, TOMY has failed to proffer potentially admissible evidence from which a fact finder could conclude that the Accused Tub meets or has elements substantially equivalent to one or more limitations of each of the Claims in issue.  ECF No. 99-1.

### 1.    <u>Infringement – Standard of Review and Applicable Law</u>

At trial, TOMY will have the burden of showing that the Accused Tub meets literally or under the doctrine of equivalents each limitation of the '209 Patent for at least one of the claims in issue.  <u>Alifax Holding SPA</u>, 2019 WL 13091790, at *3 (citing <u>Playtex Prod., Inc. v. Procter & Gamble Co.</u>, 400 F.3d 901, 906 (Fed. Cir. 2005)).  These are factual inquiries; if the facts are genuinely disputed, infringement is not appropriate for resolution on summary judgment.  <u>DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.</u>, 469 F.3d 1005, 1013 (Fed. Cir. 2006).  Nevertheless, the Court may grant summary judgment of non-infringement if one or more limitations of a claim do not read on an element of the accused product, either literally or under the doctrine of equivalents.  <u>Inline Plastics Corp. v. Lacerta Grp., Inc.</u>, 560 F. Supp. 3d 424, 430 (D. Mass. 2021); <u>Alifax Holding SPA</u>, 2019 WL 13091790, at *3.

"Summary judgment of noninfringement is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial." TechSearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1369 (Fed. Cir. 2002). Because the ultimate burden of establishing infringement is on the patentee suing for infringement, an accused infringer seeking summary judgment of non-infringement "may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence . . . fails to establish a material issue of fact essential to the patentee's case." Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001). If the Court's claims construction precludes literal infringement and "'the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment.'" Holmes Grp., Inc. v. RPS Prod., Inc., 424 F. Supp. 2d 271, 282 (D. Mass. 2006) (quoting Warner–Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 39 n.8 (1997)). Thus, the doctrine of equivalents may not be used effectively to erase a claim limitation. K-2 Crop. v. Salomon SA, 191 F.3d 1356, 1367 (Fed. Cir. 1999) ("the doctrine of equivalents cannot be used to vitiate an element from the claim in its entirety").

"Cross motions for summary judgment simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." C.R. Bard, Inc. v. Stryker Corp., No. CIV.A. 02-515ML, 2006 WL 889220, at *2 (D.R.I. Apr. 4, 2006) (internal quotation marks omitted). The legal standard for summary judgment is not changed when parties file cross motions for summary judgment. Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). Therefore, summary judgment in favor of Summer should be granted if the Court finds that no reasonable juror could find that the Accused Tub

meets, either literally or equivalently, at least one limitation of each of the '209 Patent's claims in issue.  Steyr Arms, Inc. v. SIG Sauer, Inc., Civil No. 17-cv-483-JD, 2020 WL 905534, at *3 (D.N.H. Feb. 25, 2020).  In particular, if TOMY's infringement theory is not supported either by lay or expert testimony, a finding of infringement is precluded and summary judgment should enter in favor of Summer.  Centricut, LLC v. Esab Grp., Inc., 390 F.3d 1361, 1370 (Fed. Cir. 2004) (while there is no *per se* rule that expert testimony is required to prove infringement when the art is complex, "where the accused infringer offers expert testimony negating infringement, the patentee cannot satisfy its burden of proof by relying only on testimony from those who are admittedly not expert in the field").  On the other hand, if the undisputed evidence compels the conclusion that the Accused Tub infringes because it meets every limitation of at least one of the '209 Patent's claims, judgment should enter in favor of TOMY.

2.     Infringement – Analysis of TOMY's Summary Judgment Motion

The first-filed of the two infringement summary judgment motions is TOMY's; it seeks judgment as a matter of law on its claims that the Accused Tub infringed independent Claims 1 and 30, as well as dependent Claims 2, 3, 7, 11 and 21.  ECF No. 87.  TOMY contends that a comparison of the limitations of these Claims as construed by the Court with the Accused Tub demonstrates that there is no genuine issue of material fact that the Accused Tub, in light of Summer's admissions, has features that meet every relevant limitation.  Id.  To support its motion TOMY relies on its now failed Daubert motion to exclude the Gordon opinions; alternatively, to the extent that the Court rules (as it now has) that the Gordon opinions are admissible, TOMY argues that they are irrelevant under the Court's claim construction and established law and because they conflict with Summer's admissions, which conclusively establish the material facts.

TOMY's motion fails because Summer's admissions do not go so far.  While Summer does admit that some of the features of the Accused Tub (for example, its nesting height) aligns with the limitations of the '209 Patent, it does not admit, for example, that the Accused Tub has two seating surfaces at differing inclinations extending to distal edges joined at a bottom surface apex.[13]  To the contrary, Summer has vigorously denied that the Accused Tub has these pivotal features; it supports its denial by reference to the Accused Tub itself, its interrogatory answers and, most importantly, Mr. Gordon's opinions, which the Court has found are admissible pursuant to Fed. R. Evid. 702.  Also disputed is whether the Accused Tub's curvy surfaces are sufficiently different to avoid infringement of a patent that Summer argues is based on inclinations, angles and planes, as well as whether the Accused Tub's feet avoid infringement as Mr. Gordon opined, or are a minor difference, as Mr. Mauro opined.  TOMY has failed to demonstrate that there is undisputed evidence that the Accused Tub infringes any of the '209 claims in issue.  Accordingly, I recommend that TOMY's motion for summary judgment on infringement be denied.

3.      Infringement – Analysis of Summer's Summary Judgment Motion

Summer's motion for summary judgment sets out two reasons why it contends the Court should find that TOMY cannot sustain its burden to demonstrate infringement and that judgment by a declaration of non-infringement should issue in favor of Summer.  ECF No. 99.

First, Summer argues that the evidence of the Accused Tub's curves means that it lacks the angularity called for by the '209 Patent.  This argument fails as a foundation for summary judgment in the face of the disputed facts established by the parties' respective proffers, most

---

[13] Summer also denies that other limitations (such as those related to the wales) of the '209 Patent are met by the Accused Tub.  For the Court's purposes, the Accused Tub's failure to meet or present equivalence to the '209 Patent's limitation related to the seating surfaces is enough.

notably by the dueling opinions of their respective experts, Mr. Mauro and Mr. Gordon. This issue must be resolved by a fact finder.

Second, Summer focuses on the limitation common to all of the asserted Claims in the '209 Patent – "the bottom surface having two seating surfaces disposed at differing inclinations and extending from respective back rests to distal edges joined at a bottom surface apex." '209 Patent, col. 6, lines 41-44. It points to the pre-claim construction testimony of TOMY's Fed. R. Civ. P. 30(b)(6) designee, who averred to infringement based on his interpretation (contrary to the Court's construction) of the pivotal language of Claims 1 and 30 – that the "distal edges [of the seating surfaces] joined at a bottom surface apex," Summer Infant, 2019 WL 4596780, at *6 (internal quotation marks omitted), means "joined by" the intervening structure of the central hump. ECF No. 99-1 at 12. Summer contends (and TOMY concedes) that this testimony cannot support TOMY's claim of infringement. TOMY cries foul, arguing that it is unfair to tag it with its pre-claims construction statements of reasons for infringement.

TOMY's argument avoids Summer's real point, which is the fatal flaw in TOMY's infringement claim – the utter absence of any evidence from which a fact finder could conclude that the Accused Tub meets this limitation as construed by the Court. That is, Summer presents the Accused Tub itself[14] and the Gordon Report's expert analysis of why this claim is not met and argues that TOMY cannot shoulder its burden of proving infringement either with the evidence of its Fed. R. Civ. P. 30(b)(6) witness or with the now excluded Mauro infringement opinions because both clash with the Court's claims construction. That leaves TOMY with

---

[14] Should the Court conclude that the '209 Patent is so simple that Mr. Mauro's technical expertise is not necessary to construe it, it does not follow that a fact finder could make the commonsense finding that the Accused Tub's vertical hump is actually the joinder of the seating surface edges and that its vertical walls are the seats. Such a lay observation clashes not just with the Gordon expert opinions but also with commonsense reality of the Accused Tub's physical appearance and function. I find that no reasonable juror could draw such an inference.

nothing from which a fact finder could conclude that the Accused Tub literally or by equivalence infringes the Claims that include this limitation.

I agree.  Instead of two seating surfaces that rise at differing inclinations to edges joined at the apex that functions, per the specification, to receive the infant's knees, the Accused Tub has a relatively flat bottom surface comprised of two seating surfaces that flow into each other, around and past the convex central hump that goes between the legs of the infant or toddler and serves as a stop to prevent either the infant or the toddler from slipping.  ECF No. 86-1 ¶¶ 37-40, 45, 47.  With Mr. Mauro's opinion excluded under <u>Daubert</u>, the potentially admissible evidence does not give rise to genuine issue of material fact that the Accused Tub meets this limitation.  Therefore, literal infringement is precluded; "[i]f even one limitation is missing or not met as claimed, there is no literal infringement." <u>C.R. Bard, Inc.</u>, 2006 WL 889220, at *8 (internal quotation marks omitted).  Nor is there any evidence to support a finding of infringement under the doctrine of equivalents, which applies only when the element "in the accused device performs substantially the same function in substantially the same way to obtain the same result as the claim limitation." <u>Aquatex Indus. Inc. v. Techniche Solutions</u>, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (internal quotation marks omitted).  Here, the Accused Tub's seating configuration, as Mr. Gordon's opinion explains, is structurally and functionally different from what is claimed by the '209 Patent.  ECF No. 86-1 ¶¶ 37-47, 91.  In light of the Gordon Report analysis, including paragraph 91, which points out why equivalence is not established, and with the relevant Mauro opinions excluded pursuant to <u>Daubert</u>, there is also a dearth of evidence that the Accused Tub infringes any of the asserted Claims of the '209 Patent under the doctrine of equivalents.

Based on the foregoing and focusing on what I find to be the pivotal limitation of the '209 Patent as construed by the Court – "two seating surfaces disposed at differing inclinations

and extending from respective back rests to distal edges joined at a bottom surface apex" – I conclude that the Court should sustain Summer's contention that no reasonable jury could find that the Accused Tub meets this limitation, either literally or under the doctrine of equivalents. Steyr Arms, Inc., 2020 WL 905534, at *3 ("'[N]othing more is required [from the accused infringer] than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations.'") (quoting Exigent Tech., Inc. v. Atrana Solutions, Inc., 442 F.3d 1301, 1309 (Fed. Cir. 2006)).  Therefore, I recommend that the Court enter judgment of non-infringement in favor of Summer and against TOMY.  See Alifax Holding SPA, 2019 WL 13091790, at *3 (summary judgment is appropriate if, when properly construed claims are compared to the accused product and all inferences are drawn in favor of patent owner, court concludes no reasonable jury could find infringement).

## III.   WILLFULNESS

If the Court adopts my recommendation regarding infringement, there is no need to consider TOMY's summary judgment argument that its evidence of willfulness is undisputed and sufficient to establish willfulness as a matter of law.  See Halo Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93, 103-04 (2016) ("The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate.").  Nevertheless, I pause to record my recommendation that TOMY's motion should be denied because the potentially admissible evidence of willfulness reveals that this is a hotly disputed matter to be resolved by a fact finder.

TOMY's argument relies heavily on the testimony of Summer's former employee John Harding, who testified to his understanding from "water cooler talk . . . that TOMY was accusing

Summer . . . of infringing" and that the redesign effort was "because we were in infringement of the patent." ECF No. 90-7 at 13, 19. Summer points out that this deposition lacks evidence of a reliable foundation for the statement, "we were in infringement," as well as that Harding is arguably disgruntled. ECF No. 109-1 at 5-6 (Harding testifies he was not involved with analyzing tub patents and does not know what was done); see ECF No. 109-1 at 4 (Harding "think[s he] was wrongfully terminated."). Further, TOMY concedes that Mark Sousa, the Summer employee who was responsible for clearing new products of patent infringement, testified to his belief at the time there was no infringement, although he could vaguely remember only that his belief was somehow related to the "hump in the middle." ECF No. 90-6 at 9. TOMY argues that Sousa admitted he had failed to deploy Summer's usual vetting process to avoid patent infringement regarding the Accused Tub or its predecessors, but Mr. Sousa actually said that he was "[n]ot sure," and "I would say that we must have." ECF No. 109-2 at 3-4. TOMY contends that Summer's Anthony Carbone testified that he "referenc[ed]" the TOMY Tub to create the design for the Accused Tub and argues that this is an admission of copying; in fact Mr. Carbone actually testified that he "referenc[ed]" many features of many tubs, including tubs that Summer itself was selling, and that, as he used the term "referencing," he did not mean "copying." ECF No. 90-8 at 7-8.

Also unavailing is Summer's related motion to strike[15] TOMY's argument that it can show willfulness because Summer failed to comply with its usual patent clearance procedures. ECF No. 107. TOMY is not, contrary to 35 U.S.C. § 298, improperly arguing that willfulness is proven by Summer's failure to get advice of counsel. Rather, TOMY seeks to show (and Summer hotly disputes) that Summer had a mandatory internal procedure to avoid infringement

---

[15] The other issue presented by Summer's motion to strike is addressed infra, Section IV (Damages).

of known patents, knew of the '209 Patent, yet failed to follow its own procedure.  This is a permissible argument as long as it does not improperly stray into suggesting that Summer had an affirmative duty to obtain advice of an attorney, which it unambiguously did not have.  Halo Elecs., 579 U.S. at 109 (Congress adopted § 298 to reject holding of Federal Circuit imposing affirmative duty to obtain advice of counsel); see id. at 112 ("Congress has thus left it to the potential infringer to decide whether to consult counsel – without the threat of treble damages influencing that decision.") (Breyer, J., concurring).  Summer's motion to strike this argument is denied by a separate text order.

## IV. DAMAGES

If the Court adopts my recommendation regarding infringement, there is no need to consider the issues raised by Summer's three motions that bear on TOMY's evidence in support of its claimed right to recover damages; these motions ask the Court to make evidentiary rulings that compel the finding that TOMY is barred from any damages because Daubert precludes both the Mauro opinions on the availability throughout the period of infringement of acceptable non-infringing alternatives and all of the opinions of TOMY's damage expert (Lindsay Fisher, a well-credentialled damages expert and certified fraud examiner).  ECF No. 116-1.  Because this is a report and recommendation, I have ruled on these motions and am providing my analysis below.

In issue are Summer's three motions to strike/preclude:

- Motion to strike hearsay in a May 3, 2017, email regarding Walmart's infant tub specifications ("Walmart hearsay") (ECF No. 107).[16]

- Daubert motion to preclude TOMY's expert, Mr. Mauro,[17] from testifying to opinions in his Report based on the Walmart hearsay or on Walmart documents not relevant to Summer's sales to Walmart (ECF No. 94 at 34-41).

---

[16] The other issue presented by Summer's motion to strike is addressed supra, Section III (Willfulness).

[17] Summer's motion to exclude Mr. Mauro's infringement opinions is addressed supra, Section II (Infringement).

- <u>Daubert</u> motion to preclude TOMY's expert Lindsay Fisher from testifying (ECF No. 95).

Foundational to most of what is covered by these three motions is the "Walmart hearsay," which appears in an email written by a Summer employee (Patrick Meehan) to three Summer employees involved in the development of the Accused Tub (Luke Roberts, Anthony Carbone and Michael Fusco) dated May 3, 2017, in which the writer (Meehan) reports that he had a communication with "Eric" (a Summer employee), who told him, "WM Buyer called and stated we need to shorten the height of our tub.  [The TOMY Tub] is currently 9 [inches.]  We cannot exceed 13 [inches] when stacking 3 tubs."  ECF No. 83-2 at 11.  TOMY has presented the fact that Walmart specified that "3 tubs stacked had to be less than 13 inches in height" as true and (inaccurately) undisputed in TSUF ¶ 52.  <u>But see</u> SSDF ¶ 52 (disputing that Walmart set technical requirements for tubs in issue).  TOMY's experts (Mr. Mauro and Ms. Fisher) both assume the truth of this embedded declaration attributed to "WM Buyer" to support their opinions that Summer's predecessor products and the Redesigned Tub were not acceptable non-infringing alternatives because Walmart in fact had adopted a rigid stacking specification for infant/toddler bathing tubs.  Summer asks the Court to strike the email as three layers of inadmissible hearsay and to preclude the expert testimony that relies on it as true.

The deposition testimony reveals that what appears to be the first two layers of hearsay (the declaration of Meehan reporting the declaration of "Eric") are not hearsay, but rather are covered by Fed. R. Evid. 801(d)(2) (opposing party statement), in that, at the time of the writing of the email, the author, Meehan, was a Summer employee working on product development, while the second layer declarant, "Eric," is Eric Hauser, a Summer employee, who testified and confirmed that he was reporting to colleagues on his conversation with a Walmart representative.  ECF No. 90-9 at 4.  Regarding the conversation itself, Mr. Hauser testified that he vaguely

recalled that "something like this occurred," but did not recall "the exact details," including that

he did not recollect whether the email accurately reflects what the Walmart representative said.

Id. at 5.  He speculated that it related to the space the new product would take on a shelf, which

might have been discussed ("If she called me to say that, that was probably a factor."), as well as

that the designers of the Accused Tub "must have made changes to fit into the size that we

needed to fit in."  Id. at 5.  Fusco, one of the recipients of the email, also testified about the

email, stating that "[t]he information contained in this message appeared to be incorrect" in that

"the tub that was presented to Wal-Mart had a stacking increment of less that two inches."  ECF

No. 121-1 at 6-7.

Unlike the declarations of Meehan and Hauser that appear in the email, the declaration

attributed to the Walmart representative, a stranger to Summer's business, is classic hearsay.[18]

TOMY's effort to wedge it into the business record exception (Fed. R. Evid. 803(6)) is

unavailing because that exception does not extend to "statement[s] to [a] business by a stranger

to it."  Bradley v. Sugarbaker, 891 F.3d 29, 35 (1st Cir. 2018) (quoting United States v. Vigneau,

187 F.3d 70, 75 (1st Cir. 1999)).  Such "'outsider' information, where offered for its truth [is

inadmissible] unless some other hearsay exception applies to the outsider's own statement."

Vigneau, 187 F.3d at 76.  Further, the business record exception fails if the opponent of the

evidence presents evidence that the source or circumstances indicates lack of trustworthiness,

Fed. R. Evid. 803(6)(E), which the Fusco and Hauser testimony provides.  ECF No. 121-1 at 6

("information contained in this message appeared to be incorrect"); ECF No. 90-9 at 5

(speculating, "[i]f she called me to say that, that was probably a factor") (emphasis added).  The

---

[18] As such, it suffers from all of the unreliability that is foundational to the hearsay rule.  For example, did Mr. Hauser misunderstand what the "WM Buyer" really said or meant?; did the "WM Buyer" intend the reported statement not as a specification but as a preference?; was the "WM Buyer" mistaken in making the statement?; did the "WM Buyer" make the statement, knowing it to be untrue, to manipulate Summer?

motion to strike the email in its entirety is denied.  However, the motion is granted to the following extent: the hearsay declaration of the "WM Buyer" is stricken as proof that Walmart in fact had adopted and was enforcing any specific stacking requirements applicable to Summer's infant/toddler tubs in issue in this case.

With Walmart hearsay stricken, the expert opinions that rely on it are similarly tainted. For starters, in both his Report and his declaration, TOMY's technical expert, Mr. Mauro, placed significant reliance on the truth of the "WM Buyer's" declaration in the May 3, 2017, email.  It is the only support for his opinion that there were no available acceptable non-infringing alternatives because Summer's Redesigned Tub and its predecessor tubs were "not acceptable substitutes for the patented tub to the relevant buyer, namely Walmart," in light of Walmart's supposed specification as stated by the "WM Buyer" in the May 3, 2017 email.  ECF No. 96-8 ¶¶ 58, 60; ECF No. 91 ¶ 20.  The Mauro Report acknowledges that this conclusion clashes with the reality that the Redesigned Tub <u>was</u> sold to Walmart in substantial numbers beginning in 2018; Mr. Mauro resolves this inconsistency with the patently inadmissible opinion that, assuming the truth of Walmart's stacking height specification, Summer must have deceived Walmart about its change to the stacking height.[19]  ECF No. 96-8 ¶ 58.  At his deposition, Mr. Mauro testified more expansively to the latter conclusion, asserting that, based on his experience of Walmart's contractual relationship with other customers, Summer's redesign could not have been completed in just three weeks because Walmart's strict requirements for the submission of prototypes for recertification would make that impossible.  ECF No. 93-1 at 15 ("in my personal experience it's very, very unlikely that Summer ever reported to Wal-Mart that the product no longer stacked within the 13 dimension requirement.  Even though everyone knows who produces products at

---

[19] The illogic of this reasoning is troubling.  For Mr. Mauro's theory to work, it means that Walmart did not notice that the tubs it was buying in substantial numbers were not fitting on its shelves.

Wal-Mart that that is a requirement.").[20]   TOMY argues that this proves that Summer

"conceal[ed]" from Walmart that it no longer met the stacking specification established by the

Walmart hearsay.  ECF No. 113 at 15.

"An expert's testimony is not a vehicle by which evidence that is otherwise inadmissible

may be introduced."  Jones ex rel. U.S. v. Mass. Gen. Hosp., 780 F.3d 479, 494 (1st Cir. 2015)

(internal quotation marks omitted); see United States v. Kantengwa, 781 F.3d 545, 561 (1st Cir.

2015) ("[A] party cannot call an expert simply as a conduit for introducing hearsay under the

guise that the testifying expert used the hearsay as the basis of his testimony.") (internal

quotation marks omitted).  As Fed. R. Evid. 703 requires, expert opinions based on otherwise

inadmissible hearsay may be admitted if the underlying facts or data are of a type reasonably

relied upon by experts in the particular field in forming opinions or inferences upon the subject.

See Bartlett v. Mut. Pharm. Co., 742 F. Supp. 2d 182, 191 (D.N.H. 2010).  The burden of

demonstrating that the hearsay is a "type" that meets the Daubert standard rests firmly on the

proponent of the opinion.  Wai Feng Trading Co., 2018 WL 6726557, at *8.

TOMY has presented nothing to demonstrate that the hearsay declaration of the "WM

Buyer" amounts to "facts or data . . . of a type reasonably relied upon by experts in [Mr.

Mauro's] field in forming opinions or inferences upon the subject."  Id. at *7 (internal quotation

marks omitted).  Nor does this hearsay provide a foundation for expert testimony that clears

Daubert's reliability bar in that it is simply not credible to posit that Walmart has been fooled for

---

[20] This testimony led to the parties' post-deposition exchange regarding two versions of a document that TOMY represents is a Walmart compliance manual; apparently, neither was produced during the fact discovery phase of this case.  ECF No. 96-9; ECF No. 114-6.  TOMY supplied them as part of the record on the Daubert motions, while Summer countered with its actual integrated contract with Walmart, which was produced during fact discovery and makes no reference to a requirement that Summer must comply with either of the manuals supplied after the close of fact discovery.  ECF No. 96-10.  Notably, neither version mentions the time-consuming prototype recertification procedure that Mr. Mauro testified was foundational to his opinion that Summer could not have done the redesign quickly and therefore must have deceived Walmart.  This back-and-forth is far afield from the issue for the Court – whether Mr. Mauro can build an opinion in reliance on the truth of the Walmart hearsay, which I find he cannot.

years into purchasing substantial numbers of the redesigned tubs despite a stacking efficiency that fails the supposed shelving standard set by the "WM Buyer."  Applying <u>Daubert</u>, I find that Mr. Mauro's opinions[21] regarding the availability of acceptable non-infringing alternatives, to the extent that they are based only on the hearsay declaration of the "WM Buyer" in the May 3, 2017, email, are unreliable and must be excluded.  Therefore, Summer's motion to preclude Mr. Mauro from testifying to them is granted by separate text order.

The third motion impacting damages is Summer's <u>Daubert</u> motion to preclude TOMY's damages expert, Lindsay Fisher, from testifying.  ECF No. 95.  Summer challenges sentences in several paragraphs of Ms. Fisher's Report that also rely solely on the truth of the Walmart hearsay in the May 3, 2017, email and/or on the opinions of Mr. Mauro on the same basis.  ECF No. 116-1 ¶ 49 ("I understand that Walmart would not accept a new tub unless it met a certain space requirement."); ECF No. 116-1 ¶ 60 ("I further understand that the redesign was over the thirteen-inch requirement when stacking that Walmart had specified to Summer Infant that it would accept."); ECF No. 116-1 ¶ 131 ("The Walmart buyer also informed Summer Infant in May of 2017 that its tub would need to be no more than 13 inches when stacked, which was a patented feature of the TOMY covered tub.") (footnote omitted).  Such references[22] must be excluded from her Report as unreliable for the reasons discussed above.  Otherwise, however, Ms. Fisher's opinion regarding non-infringing alternatives is well supported by a slew of other potentially admissible evidence and is appropriate expert testimony.

---

[21] Specifically, this requires the exclusion of the following from the Mauro Report: ECF No. 96-8 ¶¶ 58, 60, 64.  It also requires the exclusion of the following from the Mauro Declaration: ECF No. 91 ¶ 20.

[22] These are ¶ 49 (final three sentences), ¶ 57 (the middle sentence ending in footnote 90), ¶ 60 (the fourth and sixth sentences, the latter ending in footnote 96); ¶ 115 (last sentence ending in footnote 158); ¶ 118; ¶ 121; and ¶ 131 (final two sentences ending in footnotes 201 and 202).

The balance of Summer's Fisher <u>Daubert</u> motion focuses on four other issues with Ms. Fisher's Report.  First, Summer challenges the period over which Ms. Fisher calculated damages, arguing that the conflicting evidence will require a fact finder to determine what are alternative non-infringing alternatives and when each became available.  Summer alerts the Court that, at trial it will hotly dispute the conclusion (on which Ms. Fisher relied) that its Redesigned Tub did not became "available" until after October 9, 2018.  ECF No. 95-1 at 4.  Second, Summer attacks Ms. Fisher's decision to rely on a specially prepared document showing sales and costs, which Ms. Fisher avers is among the "common types of documents that I would rely upon," as well as that, based on her methodology, it "would be the most accurate calculation of the cost of the product."  ECF No. 116-2 at 13; ECF No. 117-1 at 4.  Third, Summer argues that there is a factual dispute regarding whether Walmart would have resumed/continued purchasing the TOMY Tub, but for its purchases of the Accused Tub.  Summer points to facts that it contends would persuade a fact finder that the TOMY Tub had been terminated and that, if Walmart had not chosen Summer's tub, it would have purchased another available product.  TOMY points to facts that would prove the opposite.  And fourth, Summer contends that Ms. Fisher's "date of the hypothetical negotiation," which is foundational to her alternative damage calculation based on a hypothetical reasonable royalty, is concededly wrong, causing that aspect of her opinion to be unreliable.  ECF No. 116 at 6.

At this stage of the case, apart from reliance on the inadmissible May 3, 2017, email, I find that Summer's arguments amount to reasons why the jury might afford less weight to or even reject Ms. Fisher's opinions; that is, they are fodder for cross examination, not outright exclusion.  See <u>Ruiz-Troche v. Pepsi-Cola of P.R. Bottling Co.</u>, 161 F.3d 77, 85 (1st Cir. 1988).  Further, Summer's critique that Ms. Fisher's work appears to invade the province of the jury to

find the foundational facts (such as when the redesigned tub became "available," as that term is defined in applicable law, or the date of the hypothetical negotiation) is not a reason to bar her from testifying at all.  See TVIIM, LLC v. McAfee, Inc., Case No. 13-cv-04545-HSG, 2015 WL 4148354, at *2-4 (N.D. Cal. July 9, 2015) (if there are sufficient facts to support expert's chosen date of hypothetical negotiation, Daubert motion is denied; finding date is jury question).  Accordingly, I have denied Summer's Daubert motion to strike these expert opinions in Ms. Fisher's Report on these grounds by a separate text order.

## V.    CONCLUSION

For the reasons stated above, by separate text order, I am denying TOMY's Daubert motion partially to exclude the opinions of Mr. Gordon (ECF No. 84) and I have granted in part and denied in part Summer's Daubert motion to preclude Mr. Mauro from testifying (ECF No. 94), Summer's Daubert motion to preclude Ms. Fisher from testifying (ECF No. 95) and Summer's motion to strike (ECF No. 107).  I recommend that the Court grant in part and deny in part TOMY's motion for partial summary judgment (ECF No. 87) and grant Summer's motion for summary judgment (ECF No. 99).  If these recommendations are adopted, I further recommend that the Court enter judgment on Summer's complaint and TOMY's counterclaim in favor of Summer and against TOMY, declaring that the Accused Tub does not infringe the '209 Patent; enter judgment in favor of TOMY and against Summer on Summer's affirmative defense of invalidity; and dismiss all other claims and counterclaims with prejudice.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.

See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v.

Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 31, 2022

47